Frieda **NIEBUHR** et al., Plaintiffs-Appellees,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, a corporation, Defendant-Appellant.

No. 73–1327.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 10, 1973.

Decided Oct. 31, 1973.

Lawrence L. Summerhays, Strong & Hanni, Salt Lake City, Utah, for defendant-appellant.

Moyle & Draper, and W. Brent Wilcox, Salt Lake City, Utah, for plaintiffs-appellees.

Before CLARK *, Associate Justice, and McWILLIAMS and DOYLE, Circuit Judges.

PER CURIAM:

This appeal is from a declaratory judgment entered in an action to declare an automobile casualty insurance policy issued by State Farm Mutual Automobile Insurance Company, appellant [State Farm Mutual] to Osborne M. Allen, an appellee, to be in full force and effect at the time of an accident had by Allen on December 22, 1967, in which two pedestrians, Frieda Niebuhr and Kathleen McFarlane, also appellees, were injured. They originally filed suit against Allen in the Third District Court of Salt Lake County, Utah, whereupon State Farm Mutual refused to fur-

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

nish Allen counsel, claiming its policy had been cancelled for non-payment of premium. Allen secured his own counsel but on trial judgments were recovered against him in the amounts of $35,560.-01 by Niebuhr and $7467.96 by Mc-Farlane. $23.80 was awarded in costs to the two plaintiffs jointly. Thereafter on May 5, 1971, this suit was filed seeking (1) a declaration that State Farm Mutual's policy was in full force and effect at the time of the accident; (2) payment of the state court judgments obtained by Niebuhr and McFarlane against Allen, and (3) payment of Allen's claims for attorney's fees and other damage to him in the amount of $5,000.-00 as a result of State Farm Mutual's wrongful refusal to defend.

State Farm Mutual claimed: (1) It was deprived of a jury trial; (2) a previous judgment in another suit on the same policy prosecuted by Allen and Ruth Ross arising from a second accident on December 28, 1967, and seeking similar relief was *res judicata* here since the Utah district court had held the policy not to be in force; (3) there was a lack of jurisdictional amount since the limits of recovery on the policy were $10,000 to each individual injured; and, finally (4) that it had cancelled the policy as of December 14, 1967, for non-payment of premium. The court found no merit in any of these contentions and entered judgment for appellees, Niebuhr and McFarlane. Allen took nothing. We affirm the judgment.

### (1) *Factual Background:*

The parties' stipulated the facts, although a deposition of Allen was read at the trial and other witnesses were heard without any material change, however, in the agreed facts of the stipulation.

Allen, a discharged war veteran, applied to Robert Fisher, an agent of State Farm Mutual, for the issuance of a six-month liability insurance policy to cover his 1963 Karmann Ghia. He had, before entering the Army, purchased an insurance policy from Fisher, and the latter remembered him as he sought another policy. Fisher told him that the policy he wanted was issued by State Farm Mutual and that a membership fee of $16.00 was required. However, Fisher said, if Allen's previous policy had required the payment of a membership fee, it would not be chargeable again.[1] He, therefore, marked in the appropriate place on the application that Allen had "a dormant" membership fee from his old policy and took Allen's check for $25.00 as a payment on the premium of $50.50, with the balance due in 60 days. The policy via binder was in effect as of September 26, 1967. When Fisher sent the application in for issuance of the policy, State Farm Mutual checked its files and could find no old policy. It thereupon issued the new policy that Allen applied for as "new business" and subsequently charged the $16.00 membership fee in addition to the $50.50 premium. In the statement of account it deducted the $16.00 membership fee from the $25.00 payment which left an amount due of $41.50 on the premium. Fisher, upon receipt of the new policy mailed it to Allen on October 9, 1967, with a statement showing the balance of $41.50 due on November 26th. Allen called Fisher upon receiving these papers and inquired about the additional charge. He was told that the old policy was not in State Farm Mutual, that no membership fee had been paid, and that, therefore, it had to be paid for issuance of the policy he wanted.[2] On November

---

1. State Farm Mutual also operates another company, State Farm Fire and Casualty Insurance Company, the policies of which involve higher premiums but no membership fee is required. It appears that Allen's former policy was purchased from it.

2. There is no factual issue as to a membership fee being required for the new policy and Allen's not paying it on the former policy. His deposition on the point reads:
"Question: Was there a membership fee charged ordinarily, do you recall?

16 a reminder notice of premium due was sent Allen. Immediately prior to November 26th, the due date of the $41.50 balance, Allen called Fisher's office and finding him away, advised the secretary that he could not pay the balance due and asked her "what I should do, if they could extend it another two weeks." No extension was made. When the due date came and Allen had not paid, State Farm Mutual cancelled the policy as of December 14, 1967, sending a notice of this cancellation on December 1st. Allen admitted that he received notice of the cancellation and "didn't do anything at all" about it because of his financial condition.

*(2) Appellant's Claims:*

■■■ We see no merit in the first three contentions. (a) While appellant originally called for a jury, it never insisted upon one. Indeed, it entered into a stipulation covering the facts; and even after taking into account the testimony of the witnesses, there was no material issue of fact involved. (b) A previous judgment in a Utah court had decided adversely to Allen on the question of the cancellation of the policy, but different parties and facts were involved. Indeed, in that case another separate and distinct accident on December 28 was involved which was beyond the time coverage of the policy under any of the various theories proposed. We have concluded that the adverse judgment in the case involving the claims of Ruth Ross does not operate as *res judicata* as to the claims of Niebuhr and McFarlane. (c) The trial court below found jurisdiction present in both the Niebuhr and McFarlane claims. The Niebuhr claim was in excess of $10,000. While the policy was limited to $10,000 in principal recovery per individual with a maximum of $20,000 per accident, it specifically provided that "in addition to the applicable limits of liability" State Farm Mutual would pay "all costs taxed against the insured in any such suit and, after entry of judgment, all interest accruing on the entire amount thereof until the company has paid as tendered such part of such judgment as does not exceed the limit of the company's liability thereon." The costs in the state suit plus the interest ran the claim well over $10,000. McFarlane's claim was below the $10,000 figure but the court found it pendent to that of Niebuhr. This was entirely appropriate since both personal injury claims arose out of the same accident and required the same proof as to liability. See Jacobson v. Atlantic City Hospital, 392 F.2d 149, 153 (3rd Cir. 1968), Wilson v. American Chain and Cable Company, 364 F.2d 558, 564 (3rd Cir. 1966).

*(3) Cancellation of the Policy:*

We differ with the trial court as to the reason why the policy was in effect on the date of the accident involved in this case, *i. e.,* December 22, 1967. It held that the entire $25.00 should have been applied on premiums which would have carried the policy until December 25 and that the notice of cancellation, contra to state law, was not accompanied by a tender of the unearned premium of $2.92, and was, therefore, invalid.

"Answer: Not on the first dealing [the policy Allen bought before going to the Army] but on the second dealing, my Karmann Ghia, he [Fisher] asked me—He remembered my face, remembered my name, and he said, 'There is a membership fee, but I think you have already paid it on your previous policy' so he didn't charge me at the time for a fee, but when I received a policy there was a fee on it. I called him up and asked him about it, and he said they could not find a record of my having insurance with them before and he asked me if I could look up in my files and give him a number of my old policy. But two years had passed since I had been in the Army and I threw a lot of stuff away and this happened to be one thing I threw away . . .

"Question: Did you receive a bill of any kind or a statement after you had paid this $25 showing that there was a balance due on this policy?

"Answer: Yes I believe so. I believe I received a notice that said $41.00 . . . This was separate. This was about—maybe a couple three weeks after I got the policy." Transcript at 77, 78.

We do not think that the Company erred in applying $16.00 of the $25.00 Allen paid to the payment of the membership fee. The understanding was that a membership fee must be paid; Allen was notified that none had previously been paid and that the $16 was being deducted from his original $25.00 payment, leaving a balance due of $41.50 on the premium. Allen was given sixty days from the effective date of the policy to pay this balance. This he failed to do and the policy was cancelled as of December 14th. While the policy provides that the membership fee was not returnable, this provision, found under the heading "Mutual Conditions" on page 9 of the policy, seems to apply only where the policy has run *over* six months since the *General Rules* of State Farm Mutual require either a refund or application to earned premiums where the Company cancels *prior* to six months. General Rule 103 provides in pertinent part:

> "When the Company cancels a policy *less than six months* after the initial effective date, the amount paid for membership fee *may* be applied to any earned automobile insurance premium . . . otherwise the amount paid for membership fee is *refunded in full* to the policyholder." (Emphasis supplied).

At the time of the cancellation the Company had two options available under General Rule 103: (1) apply the $16.00 to the premiums or (2) refund it. Since State Farm Mutual never refunded Allen's membership fee, the $16.00 was applicable to earned premiums and thus extended the coverage of the policy to December 25, 1967, three days subsequent to the liability involved here.[3]

A party cannot cancel a contract and thereby avoid its future obligations and at the same time not honor in good faith its obligations arising incident to the cancellation. The failure of State Farm Mutual to refund or at least tender payment of the membership fee, as its own rules require, is inconsistent with an intent to cancel the policy. Its retention of the membership fee without application to the earned premium is a waiver of its right to cancel the policy. State Farm Mutual says that its practice has been not to honor General Rule 103; but it cannot be heard not to honor its own rule. It is here estopped from so doing and, hence, denying liability on the policy it issued to Allen.

The judgment is, therefore, affirmed.

---

3. Glenn v. State Farm Mutual Automobile Insurance Co., 341 F.2d 5 (10th Cir. 1965), heavily relied upon by appellant, is not apposite here.