Arthur J. FREEMAN and Geraldine
Penovich, Plaintiffs,

v.

GORDON AND BREACH, SCIENCE
PUBLISHERS, INC. and Gordon and
Breach, Science Publishers, Ltd., Defendants.

No. 74 Civ. 5617 (J. M. C.).

United States District Court,
S. D. New York.

July 29, 1975.

Susan Freiman, New York City, for plaintiffs.

Harris L. Greene, New York City, for defendant Gordon & Breach Science Publishers, Ltd.

## MEMORANDUM DECISION AND ORDER

CANNELLA, District Judge.

Gordon and Breach Science Publishers, Ltd. (G&B Ltd.), one of the defendants herein, has moved this Court pursuant to Fed.R.Civ.P. 12(b)(1) and (2) for the entry of an order dismissing this diversity of citizenship action as against it for lack of subject matter and *in personam* jurisdiction. For the reasons expressed herein, we find that G&B Ltd. is doing business in New York and, thus, is subject to the *personam* jurisdiction of this court pursuant to CPLR 301. We further find that plaintiff Freeman has properly invoked our diversity jurisdiction, but that no subject matter competence exists with regard to plaintiff Penovich's claim. Therefore, the motion is granted in part and denied in part.

On motions of the instant nature, the plaintiffs have the burden of sustaining their assertion of both *personam* and subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). With regard to motions addressed to personal jurisdiction, "it is proper for the Court to rely on affidavits to establish jurisdictional facts." *Lynn v. Cohen*, 359 F.Supp. 565, 566 (S.D.N.Y.1973), and in so proceeding, "we must consider the pleadings and affidavits in the light most favorable to the plaintiffs, who are the non-moving part[ies]." *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 192–93 (E.D.Pa.1974). Of course, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2 Cir. 1963) (en banc).

### Personal Jurisdiction

In 1969, plaintiff Freeman entered into a contract with Gordon and Breach Science Publishers, Inc. (G&B Inc.), pursuant to which G&B Inc. was to publish, and Dr. Freeman was to edit a periodical known as the "International Journal of Magnetism". Plaintiff Penovich was subsequently retained by Dr. Freeman to serve as an editorial assistant for the Journal. In 1970, G&B Inc. apparently assigned its rights under the contract to the moving defendant, G&B Ltd. In 1974, the plaintiffs commenced this action to establish certain of their contract rights in the "International Journal of Magnetism" and to recover monies (royalties, expenses and legal fees) which are allegedly due them thereunder.

On the instant motion, plaintiffs assert that G&B Ltd. is subject to our jurisdiction either because it is "doing business" here, CPLR 301, or because it has transacted business in New York within the meaning of the long-arm statute, CPLR 302(a)(1). As we find that G&B Ltd. is, indeed, doing business in New York, we do not reach the question of CPLR 302(a)(1) jurisdiction.

As a "doing business" case, the instant matter is somewhat removed from the mainstream. Under more usual circumstances, the conduct of a New York subsidiary is sought to be imputed to a foreign parent with the goal of subjecting the parent to the jurisdiction of our courts. Here, a reverse set of facts pertains. G&B Ltd., a British corporation with its principal place of business in London, "is a wholly owned subsidiary of Gordon and Breach Science Publishers, Inc. [G&B Inc.]" (Adam Affidavit of Feb. 21, 1975 ¶ 3), a New York corporation with its principal place of business in New York City (G&B Inc. Answer ¶ 1). While the presence of the parent corporation in New York is not alone sufficient basis for asserting personal jurisdiction over the subsidiary, cf., *Baird v. Day & Zimmermann, Inc.*, 390 F.Supp. 883 (S.D.N.Y.1974), *aff'd mem.*, 510 F.2d 968 (2 Cir. 1975), we believe that the rules developed by the New York courts for application in the converse (subsidiary rendering parent present) situation apply equally to the matter at bar.

In classic formulation, the "doing business" test subjects a foreign corporation to *personam* jurisdiction in New York when facts evidence that it conducts business affairs in this forum "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Once a corporation is found to be doing business here it is present for "all purposes"; "jurisdiction does not fail because the cause of action has no relation in its origin to the business

. . . transacted." *Id.* at 268, 115 N.E. at 918. *See also, Gelfand v. Tanner Motor Tours, Inc.*, 339 F.2d 317, 320 (2 Cir. 1964). With regard to parent-subsidiary relationships vis-a-vis *personam* "doing business" jurisdiction, Judge Lasker has summarized the applicable principles in the following terms:

New York courts have held that a parent corporation can be present in the state because of the activities of its subsidiary. However, the activities must amount to more than the mere parent-subsidiary relationship, *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Simonson v. International Bank*, 16 A.D.2d 55, 225 N.Y.S.2d 392, aff'd 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1962). The parent may be subject to jurisdiction where the subsidiary "performs all the business" which the parent could do "were it here by its own officials." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854 (1967); *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967). Additionally, where the subsidiary is "in fact, if not in name" a branch of the parent, the distinctions between the two fall and the parent is amenable to New York's jurisdiction. *Public Administrator of County of New York v. Royal Bank of Canada*, 19 N.Y.2d 127, 132, 278 N.Y.S.2d 378, 382, 224 N.E.2d 877 (1967); *Taca International Airlines S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965).

*Tokyo Boeki (U.S.A.), Inc. v. SS Navarino*, 324 F.Supp. 361, 366 (S.D.N.Y. 1971). In *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519, 528 (S.D.N.Y.1972), Judge Lasker rephrased the above statement in light of the subsequent decision of the New York Court of Appeals in *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d

426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972):

> As restated in *Delagi*, there are two theories by which the . . . parent corporations here may be found to be "present" in New York: (a) if the relationship between the foreign parents and local subsidiaries gives rise to a "valid inference" of "an agency relationship"; and (b) if control by the parent of the subsidiary is "so complete that the subsidiary is, in fact, merely a department of the parent."

*See also, Baird v. Day & Zimmermann, Inc., supra; Furman v. General Dynamics Corp.,* 377 F.Supp. 37, 42–43 (S.D. N.Y.1974) ; *Carbone v. Fort Erie Jockey Club, Ltd.,* 47 A.D.2d 337, 366 N.Y.S.2d 485 (4 Dept. 1975).

■■ In the present case, G&B Ltd. and G&B Inc. are commonly owned and have common directors and officers. Each corporation, in our view, apparently functions as an integral part of a united endeavor. "As Mr. Gordon put it, Ltd. does production, sales, and advertising; Inc. sells Ltd. the inventory on the contracts Inc. holds; and Ltd. uses the money to create product for Inc." (Freiman Affidavit of Jan. 22, 1975 ¶ 24). We could proceed in further detail,[1] but we need not do so as the affidavits at bar make it plain that while two separate corporate entities have been established, only one commonly owned enterprise exists which, in order to function, must rely upon the joint endeavors of each constituent part. Whether reliance is placed upon the fact that G&B Ltd. is "in fact, if not in name" a branch of G&B Inc. whose formal "independence has been scrupulously preserved,"[2] or upon the fact that "[G&B Ltd.] is doing business in New York 'in the traditional sense' [because G&B Inc.] provides services beyond 'mere solicitation' and these services are sufficiently important to [G&B Ltd.] that if [G&B Inc.] did not . . . perform them, [G&B Ltd.'s] own officials would undertake to perform substantially similar services,"[3] the facts now before the Court sufficiently evidence that, although not "physically" present in New York, G&B Ltd. is doing business in this State and, therefore, is

---

1. Ms. Freiman's Affidavit states:

23. At meetings on July 24 and August 7, 1974, with representatives of the creditors of G & B Inc. in connection with the Chapter XI proceedings, Martin Gordon and the debtor-in-possession's accountant described the way the companies operate with all the journals they publish.

24. According to this description, G & B Inc. would negotiate and execute the contracts with the editors. Copyrights are obtained in the name of G & B Ltd. G & B Ltd. publishes the journals on behalf of G & B Inc. and collects payments for subscriptions, including subscriptions received by G & B Inc. When the journals are mailed to subscribers, G & B Ltd. buys them from G & B Inc. at prices which are set according to how much income they want to leave in each company. As Mr. Gordon put it, Ltd. does production, sales, and advertising; Inc. sells Ltd. the inventory on the contracts Inc. holds; and Ltd. uses the money to create product for Inc.

While Mr. Gordon, in his Affidavit of March 7, 1975, terms the above statements "incorrect" and advances a different set of facts

(¶ 13), the overall pattern of affairs, as presented by all of the documents now before the Court, convinces us that G&B Ltd. and G&B Inc. are but branches of one endeavor and that each is the agent of the other. Even if the relationship of the corporate entities did not establish the nexus between G&B Ltd. and New York, the conduct of Mr. Gordon himself would allow us to sustain jurisdiction over G&B Ltd. *Cf., Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2 Cir. 1967), *cert. denied,* 390 U. S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968).

2. *See, e. g., Boryk v. deHavilland Aircraft Co.,* 341 F.2d 666, 668 (2 Cir. 1965) ; *Taca Int'l Airlines S.A. v. Rolls-Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965).

3. *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 121 (2 Cir. 1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). *See also, Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).

subject to the *personam* jurisdiction of this Court under CPLR 301.[4]

### Subject Matter Jurisdiction

In addition to contesting the issue of *personam* jurisdiction, G&B Ltd. addresses a challenge to the Court's diversity jurisdiction. G&B Ltd. does not question the completeness of diversity between the parties (*Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267 (1806)), but rather contends that the plaintiffs have not satisfied the jurisdictional amount requirement of the diversity statute, 28 U.S.C. § 1332(a).

The diversity statute affords the district courts jurisdiction only "where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs . . . ." G&B Ltd. points to the fact that the aggregate of plaintiff Freeman's monetary claims does not exceed $10,000, that plaintiff Penovich's only claim is for $912.35, and argues that the requisites of § 1332(a) have not been met.

In asserting its position, G&B Ltd. has incorrectly minimized the significance of the first two prayers for relief advanced by Dr. Freeman, apparently because it views these claims as meritless. The complaint recites:

Wherefore plaintiffs demand:

1. On the first cause of action, that the court adjudge that the contract is terminated and all rights to publish the *International Journal of Magnetism* belong to Dr. Freeman; that the court direct the defendants to give Dr. Freeman a list of all subscribers, showing the extent of outstanding subscriptions for which defendants have been paid; that the court determine the amount of outstanding liabilities and determine which of the defendants must pay on the indemnification and that the court grant Dr. Freeman judgment for the amount due; that the defendants be enjoined from publishing the *International Journal of Magnetism*, from representing that they have the right to publish this journal, and from publishing any competing journal which is held out to be the same as or the successor to the *International Journal of Magnetism*.

2. On the second cause of action, that the court adjudge that the right to copyright future issues of the *International Journal of Magnetism* belong to Dr. Freeman.

The plaintiffs vigorously advance the rights of Dr. Freeman in the Journal and the concurrent right to an injunction against the defendants' assertion of any rights with regard to its publication. More importantly, plaintiffs (based upon independent purchase offers and subscription income) have valued the rights sought by Dr. Freeman at between $14,000 and $43,000. (*See* Freiman Affidavit at ¶¶ 29–39; Freeman Affidavit of Feb. 11, 1975 ¶¶ 26–36.) As is shown *infra*, the foregoing satisfies § 1332(a).

---

4. Federal due process requirements are clearly satisfied on the facts now before us. "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Implicit in our finding of "doing business" is the holding that G&B Ltd. has acted in New York "with a fair measure of permanence and continuity" and has purposefully availed itself of the privilege of conducting business activities in this forum, *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1288, 2 L.Ed.2d 1283 (1958), through the vehicle of G&B Inc. and Mr. Gordon. *Cf.*, *Gelfand v. Tanner Motor Tours, Ltd.*, *supra*, 385 F.2d at 121. No Constitutional impediment to *personam* jurisdiction over G&B Ltd. exists.

In *Glenwood Light and Water Co. v. Mutual Light, Heat and Power Co.,* 239 U.S. 121, 125, 36 S.Ct. 30, 32, 60 L.Ed. 174 (1915), the Supreme Court recognized "that the jurisdictional amount is to be tested by the value of the object to be gained by [the] complainant" and in *Thomson v. Gaskill,* 315 U.S. 442, 447, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942), the Court reiterated that "In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation." *See, Hatfield v. Mullins Ford Co.,* 389 F.Supp. 278 (W.D.Va.1975); C. Wright, *Law of Federal Courts* §§ 33 and 34 at 110–19 (2 ed. 1970). In this circuit, the court of appeals recently restated the applicable rule in the following terms: "the amount in controversy is calculated from the plaintiff's standpoint; 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of New York Authority,* 457 F.2d 46, 49 (2 Cir.), cert. denied, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972).

In the present case, the value which Dr. Freeman attaches to his right to publish the Journal and to prevent the defendants from so doing far exceeds $10,000. Since, "[i]t must appear to a legal certainty [without first reaching the merits of the case] that the claim is really for less than the jurisdictional amount to justify dismissal" of a diversity action, *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938), on the facts now before the Court, we believe that the requisites of § 1332(a) have been satisfied and we find that diversity jurisdiction exists with regard to the Freeman claims. *See also, Moore v. Betit,* 511 F.2d 1004, 1006 (2 Cir. 1975); *Scoma v. Chicago Bd. of Educ.,* 391 F. Supp. 452, 458 (N.D.Ill.1974).

With regard to plaintiff Penovich's claim for $912.35 in expenses (a claim which is joined in the fourth count of the complaint with Dr. Freeman's like claim), subject matter jurisdiction is sought to be predicated on the doctrine of pendent parties—a concept which is said to arise from *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). When faced with the assertion of this doctrine in *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Court avoided deciding its perimeters, but did recognize that "a subtle and complex question with far reaching implications" is raised by the concept of pendent parties. *Id.* at 715, 93 S.Ct. at 1799. Mr. Justice Marshall noted, however, that numerous courts of appeals had adopted the doctrine of pendent parties, *id.* 411 U.S. at 713 and 713–14 n. 29, 93 S.Ct. 1785, and, indeed, this expansion of *Gibbs* has become firmly rooted in the decisions of the Second Circuit. *See* the cases collected in *Bolger v. Laventhol, Krekstein, Horwath & Horwath,* 381 F.Supp. 260, 268 (S.D.N.Y.1974). *See also, Trustees of the Colorado Pipe Indus. Employee Benefit Funds v. Colorado Springs Plumbing and Heating Co.,* 388 F.Supp. 71, 74–76 (D.Colo.1975); *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 88–89 (S.D.N.Y. 1974).

With regard to the precise issue at bar, Professors Wright, Miller and Cooper accurately reflect the present state of the law in the following words:

A number of courts have now held that if diversity exists and one claim is for more than $10,000 the court also may hear another claim for or against another party for less than $10,000.[53] This construction of the purely statutory requirement of amount in controversy would have made sense even if Gibbs had never been decided, but a recent Supreme Court case casts grave doubt on the

authoritativeness of these recent cases.[5]

13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567 at 457–58 (1975) (footnotes omitted). *See also,* C. Wright, *Law of Federal Courts, supra* § 36 at 123–24 and nn. 17–19. The Supreme Court case to which the professors refer is *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), wherein (in the class action context) the Court held "that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional—amount requirement for suit in the federal courts . . ." and that this principle "requires dismissal of those litigants whose claims do not satisfy the jurisdictional amount, even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court." *Id.* at 294–95, 94 S. Ct. at 509. *Compare,* Mr. Justice Brennan's dissent, Id. 414 U.S. at 302–312, 94 S.Ct. 505.

Subsequent to *Zahn,* at least one district court has found that decision preclusive of a pendent party claim such as Penovich's.

It may be concluded that the majority [in *Zahn*] rejected the pendent or ancillary approach as a valid basis for jurisdiction in diversity cases where only state and not federal law is invoked, and that each party plaintiff must still satisfy the jurisdictional amount as to the "matter in controversy". A reading and rereading of *Zahn* and its forebears leads this court to the conclusion that no district court discretion is involved in this particular context. It is simply a

"power" or jurisdictional situation and there can be no pendent nor ancillary jurisdiction. Perhaps this is making too much out of silence, but the conclusion seems logical and compelling.

*United Pacific/Reliance Ins. Cos. v. Lewiston,* 372 F.Supp. 700, 704 (D.Idaho 1974). *Cf., Uniroyal, Inc. v. Heller, supra,* 65 F.R.D. at 88; *Cass Clay, Inc. v. Northwestern Public Service Co.,* 63 F. R.D. 34, 35 (D.S.D.1974); *compare, Mas v. Perry,* 489 F.2d 1396, 1401 (5 Cir. 1974), *with, Mobil Oil Corp. v. Kelley,* 493 F.2d 784, 789 n. 2 (5 Cir. 1974). Although *United Pacific* was decided by a court of the Ninth Circuit, a circuit which does not adopt the doctrine of pendent parties (*see, Hymer v. Chai,* 407 F.2d 136 (9 Cir. 1969)), Judge Anderson's reasoning is no less persuasive because of this split between our circuits. And while the professors *supra* see *Zahn* as casting grave doubts upon the vitality of the cases upholding pendent party jurisdiction in the present circumstances, Professor Jo Desha Lucas is more definite in his view of the impact of that decision. He states: "These decisions, permitting claims under the jurisdictional minimum to be litigated as pendent to a claim above the minimum appear to be in doubtful consonance with the Supreme Court's opinion in *Snyder v. Harris* (1969) . . . and clearly repudiated by the more recent decision in *Zahn v. International Paper Co.* . . ." 1 J. Moore, *Federal Practice* ¶ 0.97[3] (2 ed. 1974) (supp. 1974 at 136).

We agree with the authorities discussed *supra* that whatever vitality

---

5. In footnote 53, the professors cite the following cases to support pendent party jurisdiction in these circumstances: *F. C. Stiles Contracting Co. v. Home Ins. Co.,* 431 F.2d 917 (6 Cir. 1970); *Hatridge v. Aetna Cas. & Sur. Co.,* 415 F.2d 809 (8 Cir. 1969); *Stone v. Stone,* 405 F.2d 94 (4 Cir. 1968), *cert. denied,* 409 U.S. 1000, 93 S.Ct. 315, 34 L.Ed.2d 261 (1972); *Jacobson v. Atlantic City Hospital,* 392 F.2d 149 (3 Cir. 1968); *Wilson v. American Chain & Cable Co.,* 364 F.2d 558 (3 Cir. 1966); and the following

cases as *contra: Hymer v. Chai,* 407 F.2d 136 (9 Cir. 1969); *United Pacific/Reliance Ins. Cos. v. Lewiston,* 372 F.Supp. 700 (D. Idaho 1974); *Robison v. Castello,* 331 F. Supp. 667 (E.D.La.1971); *Ciaramitaro v. Woods,* 324 F.Supp. 1388 (E.D.Mich.1971); *Rompe v. Yablon,* 277 F.Supp. 662 (S.D.N.Y. 1967). *See also, Niebuhr v. State Farm Mutual Automobile Ins. Co.,* 486 F.2d 618, 621 (10 Cir. 1973); *Nelson v. Keefer,* 451 F.2d 289, 291 (3 Cir. 1971).

the doctrine of pendent parties may have in other contexts (*i. e.*, federal or admiralty claims), *Zahn* effectively forecloses the invocation of pendent party or ancillary jurisdiction to sustain federal jurisdiction over a diversity claim not in excess of $10,000. The result which thereby pertains serves neither the interest of litigants, the courts, nor of judicial economy, but rather spawns duplicative state and federal litigation of closely interrelated issues. Thus, were we free to exercise the discretion vested in us with regard to the claims of pendent parties (*see, Moor,* 411 U.S. at 415–17, 93 S.Ct. 1785), we would not hesitate to retain jurisdiction over the Penovich claim. But as Judge Anderson observed in *United Pacific,* "no district court discretion is involved in this particular context," 372 F.Supp. at 704, and we are, therefore, constrained by *Zahn* to dismiss the Penovich claim. The issue is nonetheless an interesting one and, if plaintiffs' counsel believes that immediate appellate review of our decision would be availing to her clients, we will, upon her request, direct the entry of judgment pursuant to Fed.R.Civ. P. 54(b).

For the reasons stated in this decision, the present motion, insofar as it seeks the dismissal of this case for lack of personal jurisdiction over Gordon and Breach Science Publishers, Ltd. and lack of subject matter jurisdiction over the Freeman claims, is hereby denied. Insofar as the present motion prays for the dismissal of the Penovich claim for lack of subject matter jurisdiction, it is hereby granted and it is hereby

Ordered that the fourth cause of action of the complaint, insofar as it asserts a claim on behalf of Geraldine Penovich, be and it hereby is dismissed as to Gordon and Breach Science Publishers, Ltd. upon the motion of Gordon and Breach Science Publishers, Ltd. and as to Gordon and Breach Science Publishers, Inc. upon the motion of the Court pursuant to Fed.R.Civ.P. 12(h)(3).

It is so ordered.