**LARBALL PUBLISHING COMPANY, INC., Plaintiff,**

v.

**CBS INC., CBS Records International Division, a division or subsidiary of CBS, Inc.; Discos CBS International, a division or subsidiary of CBS, Inc.; Discos CBS, S.A., a division or subsidiary of CBS, Inc.; Epic Records, Inc., a subsidiary of CBS, Inc.; CBS/Columbia International, S.A.; a division or subsidiary of CBS, Inc.; Mundo Musical, S.A., Miguel Bose; X, Y, Z, companies, divisions or subsidiaries of CBS, Inc., Defendants.**

No. 83 Civ. 8329 (KTD).

United States District Court, S.D. New York.

March 9, 1987.

Parcher Arisohn & Hayes, P.C., New York City, for plaintiff; Stewart L. Levy, Helene M. Freeman, of counsel.

Weil, Gotshal & Manges, New York City, for defendant CBS Inc.; Robert G. Sugarman, Robin E. Silverman, Jonathan M. Polk, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Larball Publishing Company, Inc. ("Larball"), is a music publishing company and brings this action for copyright infringement against CBS Inc. ("CBS"), CBS Records International Division ("CRI") an unincorporated division of CBS, Discos CBS International ("Discos Int'l") an unincorporated division of CBS located in Florida, Epic Records, Inc. ("EPIC"), and various of CBS' foreign subsidiaries and affiliates.[1] CBS now moves for a partial

---

1. The subsidiaries and affiliates involved in this litigation include the following wholly-owned companies: CBS/Columbia International, S.A. in Mexico; Discos CBS, S.A. in Columbia; CBS/Columbia C.A. in Venezuela; CBS/Columbia, A.G. which in turn owns 100% of the stock of Discos CBS, S.A. in Spain and CBS Grammofoonplaten, B.V. in Holland, and Industria de Discos Centro Americana S.A. in Costa Rica.

Also included among CBS' subsidiaries are the following: CBS Records Chile Limitada of which CBS owns 98%; and CBS Discos de Peru, S.A. of which CBS owns 97.992%.

During the relevant time period, the following were licensees of CBS: Heriba Limitada in Bolivia; Emporio Musical, S.A. in Ecuador; from January 1980 until December 1981, Industrial Sono-Radio, S.A. in Peru; and from January 1980 until June 1981, Industrias Electricas Y Musicales Odeon, S.A. in Chile.

summary judgment dismissing Larball's claims against its foreign subsidiaries and affiliates for lack of personal jurisdiction. For the following reasons defendants' motion is denied.

## FACTS

Prior to July 25, 1979, authors L. Russell Brown ("Brown") and Sandy Linzer ("Linzer") wrote the music and lyrics to a song entitled "Wiggle and a Giggle All Night" ("Wiggle"). The song was copyrighted in August, 1979, and the copyright was thereafter assigned to Larball.

After July 25, 1979, Miguel Bose ("Bose"), a singer known primarily in Spanish speaking countries, wrote a song entitled "Don Diablo" which copied a portion of the music, though not the lyrics of "Wiggle". CBS admits that parts of the two songs are identical.

At the time he wrote "Don Diablo", Bose was under contract to record exclusively for Discos CBS, S.A. ("Discos Spain") which is a company wholly owned by CBS Columbia, A.G., a Swiss corporation, which is, in turn, wholly owned by CBS.

Neither CBS, Discos Spain, nor Bose, either requested or received permission to use the music from "Wiggle" in the song, "Don Diablo".

In 1980, Discos Spain released Bose's version of "Don Diablo" as the B side of a single record in Spain. Discos Spain also released the song on a long-playing record album and cassette tape entitled "Miguel". Discos International further manufactured and released, in the United States and Puerto Rico, the "Miguel" album and cassette tape. Through CBS' subsidiaries and licensees Bose's "Don Diablo" was also distributed in eight additional Spanish speaking countries and Brazil.

In March, 1982, CBS was notified that "Don Diablo" infringed Larball's copyright in "Wiggle". Thereafter, in September 1982, Ray Coniff recorded an instrumental version of "Don Diablo" in California pursuant to a contract he had with CBS. Coniff's version of "Don Diablo" was included on an album and cassette entitled "Amor Amor" and distributed in the United States and Puerto Rico by Discos International. Moreover, the recording was released and distributed by CBS' subsidiaries and licensees in eleven additional Spanish speaking countries and Brazil. The matrix [2] for the "Amor Amor" album and tape was sent from CBS' Latin American Operations Office in Florida, directly to its affiliates and licensees to be used in manufacturing "Amor Amor" albums and tapes.

In 1982, an audio-visual tape of Ray Coniff's performance of "Don Diablo" was made although it is not clear to whom, if anyone, the tape was distributed. CBS received payments from its subsidiaries for their sales of Coniff's "Don Diablo".

In 1982, Discos International distributed an album entitled "Bravo Muchachos y Sus Grandes Exitos" ("Bravo") which was essentially a greatest hits album composed of the work of various artists and included Bose's recording of "Don Diablo". "Bravo" was further distributed by CBS' affiliates in seven additional Spanish speaking countries.

Plaintiff now seeks to recover the profits made by CBS in the United States and Puerto Rico, and the profits of CBS' foreign subsidiaries elsewhere, from the sales of the various versions of "Don Diablo". Plaintiff also seeks to impose a constructive trust on the profits CBS has made on the sales of the infringing song by its foreign subsidiaries should this court not have jurisdiction over the subsidiaries.

Because I find that CBS acted as an agent for its foreign subsidiaries, defendants' motion for partial summary judgment is denied.

## JURISDICTION

■ While the existence of a parent-subsidiary relationship is, in and of itself, an insufficient basis for finding in personam

---

**2.** A matrix is defined as "any device … used directly or indirectly, in the manufacture of Records and which is derived from a Master Recording, and every duplicate of such device." Exh. N.

jurisdiction over the subsidiary, *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*, 751 F.2d 117, 120 (2d Cir.1984); *Freeman v. Gordon & Breach Science Publishers, Inc.*, 398 F.Supp. 519, 521 (S.D. N.Y.1975); there are two theories pursuant to which a subsidiary may be found to be present in the jurisdiction: (1) if the parent acts as its agent; or (2) if the subsidiary is a "mere department" of its parent. *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519, 528 (S.D.N.Y.1972); *Freeman*, 398 F.Supp. at 521.

### Mere Department

 Although CBS as the sole or primary shareholder of its subsidiaries exercises significant control over them, it does not rise to such a level as to make the subsidiaries mere departments of CBS. In *Volkswagenwerk*, the Second Circuit listed four factors to consider in determining whether a subsidiary is a mere department of its parent: (1) common ownership; (2) financial dependency; (3) interference with subsidiaries' selection of personnel and disregard for corporate formalities; and (4) control of subsidiaries' marketing and operational policies. 751 F.2d at 120–22. Importantly, there is no evidence that CBS' subsidiaries are financially dependent on CBS. They are separately incorporated and keep their own books, records, and bank accounts. The subsidiaries' profits are their own and are not counted by CBS on its books. CBS does file a consolidated financial statement with the Securities and Exchange Commission and in its Annual Report to its shareholders. For the most part, the subsidiaries select their own employees, except that key personnel, such as the subsidiaries' managing directors and others who report directly to them, must be approved by CBS. Dolan Deposition Exh. 1, 47.

The evidence further suggests that the subsidiaries generally make their own independent decisions about signing artists within their territories and which songs to release. Major expenditures, however, including artist advances, must be approved by CBS. Dolan Affidavit, ¶ 9; Dolan Deposition Exh. 1, 47; Caputo Deposition Exh.

4, 14–15 (stating that the Brazilian and Mexican subsidiaries have the highest individual approval authority and need seek CBS approval only for expenditures over $100,000.00).

Thus, CBS' subsidiaries are sufficiently independent to avoid mere department status. *Cf. Public Adm'r v. Royal Bank of Canada*, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967).

### Agency

In *Frummer v. Hilton Hotels Int'l.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967) the New York Court of Appeals held that an agency relationship would be found where "[one corporation] does all the business which [the other corporation] could do were it here by its own officials."

CBS argues that its subsidiaries operate only within the countries in which they are located, and that none of them does any business outside their own territories. Thus, CBS argues there is no business for an agent to perform elsewhere on the subsidiaries' behalf.

 Plaintiff argues, however, that certain matrix licensing agreements show that CBS acts as the agent for its subsidiaries' record sales worldwide. In support of its argument plaintiff has submitted five examples of the licensing agreements between CBS and its subsidiaries or licensees in Argentina, Brazil, Costa Rica, Mexico, and Spain. Essentially, the agreements require the subsidiaries to grant to CBS the exclusive right to manufacture and distribute recordings made from the subsidiaries' matrices in the "outside territory", defined as the world other than the country in which the subsidiary is located. Pursuant to the agreements, CBS undertakes to distribute recordings belonging to its subsidiaries' in the United States and grants sublicenses to its subsidiaries elsewhere. Thus, CBS' control over the distribution of its subsidiaries' recordings worldwide is almost absolute. It is clear that were CBS not handling the subsidiaries worldwide sales, the subsidiaries would be required to

perform this function themselves. Thus, I find that CBS is conducting all the business its subsidiaries' could do were they present by their own officials.

CBS argues that this holding will subject any foreign licensor to the jurisdiction of the New York courts "merely by licensing sale of its product to a New York corporation." Defendants' Reply Memo., 6 n. 3. That CBS acts as the agent for its subsidiaries is the only reasonable conclusion to be drawn from the facts in this particular case. That is not to say that any licensing agreement will automatically subject any foreign licensor to jurisdiction in the New York courts. Certainly, such determinations will continue to turn on the facts of each case.

Because I find CBS' subsidiaries are doing business in New York through their agent CBS, defendants' motion for partial summary judgment is denied. Further, because the subsidiaries are subject to jurisdiction here, I need not consider plaintiff's constructive trust argument.

SO ORDERED.