**MEAT SYSTEMS CORPORATION,**
Plaintiff,

v.

**BEN LANGEL–MOL, INC., et al., Defendants.**

No. 75 Civ. 5306.

United States District Court,
S. D. New York.

March 15, 1976.

Bell, Wolkowitz, Beckman & Klee, New York City, for plaintiff; Lerner, David, Littenberg & Samuel, P.S., Westfield, N.J., of counsel.

Browdy & Neimark, Washington, D.C., for defendant Homburg B.V.; Robert W. Fiddler, New York City, of counsel.

Brooks, Haidt, Haffner & Delahunty, New York City, for defendant Knud Simonsen Ind., Ltd.

Howard G. Kristol, New York City, for defendant Ben Langel-Mol, Inc.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Homburg B.V. ("Homburg Holland"), one of the defendants in this patent and antitrust action has made several related motions [1] based on the contention that it is not doing business in New York and is therefore not subject to suit therein.

Both sides agree that the question presented by these motions is whether Homburg Holland has sufficient contacts with the Southern District of New York to meet the test of "doing business" under C.P.L.R. § 301.[2] If Homburg Holland is doing business here, it is then subject to service and venue is also proper.

The issue of jurisdiction under C.P. L.R. § 301 is hardly a novel one, but neither is it subject to the application of hard and fast rules. Instead, each case must be determined on its own particular facts. The applicable test involves

---

1. It has moved under Federal Rule 12(b) and (5) to dismiss the claim against it, or in the alternative, to quash service of summons, on the grounds that it is not subject to service in New York. Homburg Holland has also moved to dismiss the claim against it under Federal Rule 12(b)(3), alleging that venue is not properly laid in this court.

2. Since both parties agree (a) that § 301 applies and (b) that it made no difference which corporation was served, we need not consider the problems presented by the various standards to be used in determining jurisdiction in connection with the federal claims. See 15 U.S.C. §§ 15, 22, 28 U.S.C. § 1391(c), *Arrowsmith v. UPI* (2d Cir. en banc, 1963) 320 F.2d 219, *ECC Corp. v. Slater Electric, Inc.* (E.D.N.Y. 1971) 336 F.Supp. 148.

common sense as much as legal precedent. *Bryant v. Finnish National Airline* (1965) 15 N.Y.2d 426, 432, 260 N.Y. S.2d 625, 208 N.E.2d 439.

In its present posture, the factual record before us is, to say the least, sparse. Of necessity, therefore, our understanding of the facts is based on representations of counsel at oral argument as well as the excerpts from the underlying contract around which the present dispute centers, and the one affidavit submitted with the moving papers. We note as significant the fact that the single affidavit submitted in support of Homburg Holland's motion to dismiss was sworn to by one Bernard Bowman, Vice President and President respectively of the two New York corporations through whom plaintiff contends Homburg Holland "does business" in New York. Homburg Holland itself submitted no affidavits. According to Bowman's affidavit, Homburg Holland, a Dutch corporation with principal offices in Cuijk, The Netherlands, is engaged in the manufacture and sale of canned hams and other meat products. It has no officers in the United States, its shipments are sent C.I.F. port of entry, and any orders for its products must allegedly be confirmed in The Netherlands.

Homburg Holland owns all 20 of the outstanding shares of Homburg Meat Products, Inc. ("Homburg Meats"), a New York corporation with offices at 122 East 42nd Street, New York, New York. The same person serves as president of both Homburg Holland and Homburg Meats. Although Homburg Holland allegedly receives no profits from Homburg Meats, Homburg Meats was organized in 1959 to maintain "the image of the Homburg label and its products in the American market and creat[e] for all customers of these products a feeling that they are dealing directly with the Homburg plant office in New York."

All the affairs of Homburg Meats are administered by the Bernard Bowman Corporation ("Bowman"), also a New York corporation. Bowman is a wholly owned subsidiary of International Foodservice Corporation, a corporation with whom Homburg Holland disclaims any relationship. Nevertheless, Bowman has offices at 122 East 42nd Street, New York, New York, the same address as Homburg Meats and Bernard Bowman himself is president of Bowman Corporation and Vice President of Homburg Meats.

The agreement between Bowman and Homburg Holland, which Homburg Holland's brief characterizes as descriptive of their "entire working relationship", gives Bowman the exclusive responsibility of administering the affairs of Homburg Meats. This responsibility includes: cultivating relations with customers, promoting the Homburg label, assisting in the registration of such labels, attending to claims, corresponding with customers on Homburg Meats' stationery,[3] and rendering all other necessary administrative services. Bowman is designated as the "exclusive sales agent" for both Homburg Holland and Homburg Meats concerning all meat products shipped by Homburg Holland from any of its plants. In his affidavit, Bernard Bowman states that Homburg Holland also deals directly with nine other companies, but counsel for Homburg Holland revealed in oral argument that Bowman receives "royalties" on these sales.

Oral argument also disclosed that one of the primary services Bowman performs for Homburg Holland is processing all claims arising from the sale and distribution of Homburg Holland products in the United States, regardless of the nature of the transaction.

In seeking to avoid § 301 jurisdiction, Homburg Holland contends that Bowman is at most an independent contractor, rather than its agent. For § 301 purposes, the proper characterization of the relationship of Homburg Holland,

---

**3.** The Homburg Meats stationery clearly indicates in the letterhead that the company is a subsidiary of Homburg Holland.

Bowman and Homburg Meats[4] is governed by *Frummer v. Hilton Hotels International* (1967) 19 N.Y.2d 536, 281 N.Y.S.2d 41, 227 N.E.2d 851, and its progeny. In *Frummer*, a New York plaintiff asserted a cause of action against Hilton Hotels (U.K.) Ltd., a British corporation, based on a personal injury suffered in the London Hilton Hotel. The New York Court of Appeals, per Fuld, Ch. J., held that jurisdiction over the British corporation was proper under § 301 because it was "doing business" in New York through its affiliate, the Hilton Reservation Service, a New York corporation. The Hilton Hotels Corporation and Hilton Hotels International, both Delaware corporations, jointly owned the Reservation Service and Hilton U.K., and maintained the Reservation Service on a non-profit basis for the benefit of the London Hilton and other Hilton hotels. The *Frummer* court inferred an agency relationship from this common ownership, but in its view, the "significant and pivotal factor" in the determination of the jurisdictional question was that "the Service does all the business [in New York] which Hilton (U.K.) could do were it here by its own officials". 19 N.Y.2d at 537, 281 N.Y. S.2d at 44, 227 N.E.2d at 854. This business consists of public relations and publicity work, helping to generate business, and confirming availability of reservations.[5] In *Aquascutum of London, Inc. v. S.S. American Champion* (1970) 426 F.2d 205, the Second Circuit characterized the rule of *Frummer* as "solicitation plus", saying that "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Id.* at 211.

Applying the reasoning of *Frummer* to the apparent facts of this case, we have determined that Homburg Holland is doing business in New York in the § 301 sense through its agents, Bowman and Homburg Meats. Bowman is required under the terms of its agreement with Homburg Holland to administer the affairs of Homburg Meats so as to create the impression that Homburg Holland is present in New York. In furtherance of that duty, Bowman solicits orders for Homburg Holland products—both directly and through Homburg Meats. Moreover, and most importantly, it services all claims and complaints made by any and all Homburg customers in this country, whether they purchased through Bowman or directly from Homburg Holland. Thus, Bowman is Homburg Holland's exclusive U.S. claims adjustor. Although we cannot determine from the record before us whether Bowman has the final word on the adjustment of such claims and complaints or whether it must defer ultimately to Homburg Holland, this service—in conjunction with its solicitation of orders for Homburg Holland products—would seem nevertheless to meet the "solicitation plus" test enunciated in *Frummer* and explained in *Aquascutum* (see note 5 above). We are reminded of Judge Lasker's comment in *Sunrise Toyota Ltd. v. Toyota Motor Co.* (S.D.N.Y.1972) 55 F.R.D. 519, 530, in which he found § 301 jurisdiction, that

> "Whatever the advantages of limited liability or taxation this [corporate] structure may have, under New York law it does not insulate the parent from suit, for the parent is doing business here through its agents."

Homburg Holland's reliance on *Delagi v. Volkswagenwerk A.G.* (1972) 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895, in which the court declined to find § 301 jurisdiction, is misplaced. Plaintiff, a New York resident, sought to as-

**4.** At oral argument, defendant conceded that should we find it present in New York for § 301 purposes by virtue of the New York activities of either Bowman Corporation or Homburg Meats or both, it would make no issue of the fact that only Homburg Meats was served.

**5.** Although the majority opinion states that the reservation service actually confirmed reservations, 19 N.Y.2d at 537, 281 N.Y.S.2d 41, 227 N.E.2d 851, Judge Breitel's dissent notes that it could merely confirm that reservations were available. 19 N.Y.2d at 541–542, 281 N.Y.S.2d 41, 227 N.E.2d 851.

234

sert § 301 jurisdiction in an action for negligence and breach of warranty over the German manufacturer of an allegedly defective automobile he purchased in Germany. The purported basis for § 301 jurisdiction was the fact that one franchised wholesale distributor (World-Wide Volkswagen) of the American subsidiary (Volkswagen of America) of the defendant Volkswagen A.G. happened to be located in New York. The subsidiary itself (Volkswagen of America) was, however, located in New Jersey. Moreover, the New York franchised distributor (World-Wide)—unlike the Reservation Service in *Frummer*—was not owned by either Volkswagen of America or its parent, the defendant Volkswagen A.G. In fact, neither corporation owned *any* of World-Wide's stock. The *Delagi* court found that World-Wide performed no services for Volkswagen A.G. and concluded that the absence of common ownership precluded even an inference of agency. In stark contrast to the facts in *Delagi*, we find here that both common ownership *and* the performance of essential services exist upon which to base § 301 jurisdiction.

In view of the foregoing, Homburg Holland's motions are denied. Because of the paltry state of the record, however, this decision is without prejudice to a motion by defendant for reargument supported by a more extensive affidavit from Bernard Bowman. If such a motion should be made, the court would order Mr. Bowman to submit to a deposition on the issues outlined in this memorandum.

SO ORDERED.