TOP FORM MILLS, INC., Plaintiff,

v.

SOCIEDAD NATIONALE INDUSTRIA APPLICAZIONI VISCOSA, d/b/a Snia Viscosa, et al., S.S. LINDO her engines, boilers, etc. and S.S. MARITIME CHAMP her engines, boilers, etc., Defendants.

No. 75 Civ. 4940.

United States District Court, S. D. New York.

March 16, 1977.

Poles, Tublin, Patestides & Stratakis, New York City, for Top Form Mills; Patrick V. Martin, Alan Van Pragg, New York City, of counsel.

Pavia & Harcourt, New York City, for Avandero S.A.S.; David A. Botwinik, Terence L. Kelleher, New York City, of counsel.

Zimet, Haines, Moss & Goodkind, New York City, for Societa Nazionale Industria Applicazioni Viscosa; Howard I. Rhine, New York City, R. Jeffrey More, of counsel.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

This lawsuit arises out of the allegedly defective shipment of approximately twenty-three tons of Italian knit fabric received by the purchaser, plaintiff Top Form Mills, Inc., in early 1974. The plaintiff has named as defendants all parties involved in the manufacture and delivery of the fabric. Presently before this court are motions by two foreign defendants, Societa Nazionale Industria Applicazioni Viscosa and Fratelli Avandero S.A.S., to dismiss the complaint as against each pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of personal jurisdiction. Fratelli Avandero S.A.S. has also moved for dismissal for insufficiency of service of process pursuant to Rule 12(b)(5) and, alternatively, on the ground of *forum non conveniens*, citing 28 U.S.C. § 1404(a). For the reasons which follow, all motions are denied.

The preliminary facts establishing the background of this dispute and the roles of the parties involved are as follows. Top Form Mills, Inc. ("Top Form"), is a New York corporation which purchases fiber and

fabric from manufacturers both in the United States and abroad for refinishing by its mills into consumer products. In November of 1973, Mr. Manny Kay, president of Top Form, contracted to purchase over one hundred tons of knit fabrics from defendant Societa Nazionale Industria Applicazioni Viscosa ("Societa"), an Italian manufacturer and vendor of fabric located in Milan. In accordance with the contract, which was entirely negotiated and signed by the parties in Italy, the first of several scheduled shipments of the fabric was prepared by Societa in January, 1974.

In early February, 1974, pursuant to an agreement entered into with Top Form, defendant Fratelli Avandero S.A.S. ("Avandero"), an Italian freight forwarding agency with its principal place of business in Biella, Italy, undertook to deliver the first installment of fabric to the United States. Avandero received the goods from Societa at Avandero's Milan warehouse, stored them in three containers and transported them to Antwerp, Belgium. There, the containers were delivered to defendant Maritime Container Lines, Ltd., which in turn stowed them aboard its vessels, the S. S. Lindo and the S. S. Maritime Champ, for shipment to the United States. The Maritime Champ reached Portsmouth, Virginia, on March 28, 1974 and the Lindo arrived April 5, whereupon Top Form was notified that the fabric had been delivered in a substantially damaged condition.

Shortly thereafter, Top Form instituted this lawsuit.[1] Personal service of the complaint and summons addressed to defendant Societa was made October 24, 1975 on Mr. Robert Oelbaum, assistant secretary of Snia Viscosa, Inc., a New York corporation which is a wholly-owned subsidiary of Societa. Personal service addressed to defendant Avandero was made October 10, 1975 on Ms. Lise Curry, secretary to Mr. Ivan Mandukich, then Avandero's New York sales representative.[2]

Having set out these introductory details, the court now turns to the motions before it.

### Societa

*Rule 12(b)(2)*

On the present motions to dismiss pursuant to Rule 12(b)(2), Fed.R.Civ.P., made on behalf of Societa and Avandero, this court must look to the law of New York in order to determine whether it has jurisdiction over the person of either of these foreign business organizations.[3] *Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963) (*en banc*). The burden of proof is on plaintiff Top Form to sustain its assertion of jurisdiction by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Evans v. Eric*, 370 F.Supp. 1123 (S.D.N.Y. 1973). However, on these motions it is proper for this court to examine affidavits and depositions to establish the jurisdictional facts, *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories*, 384 F.2d 97 (2d Cir. 1967) (per curiam); *Lynn v. Cohen*, 359 F.Supp. 565, 566 (S.D.N.Y.1973), and in so doing the court "must consider the pleadings and affidavits in the light most favorable to the [plaintiff], who [is] the non-moving party." *Ghazoul v. International Management Services, Inc.*, 398

1. Also named was Great American Insurance Company, which allegedly insured the shipment of fabric from loss or damage.

2. Societa was named in the complaint as "Sociedad Nationale Industria Applicazioni Viscosa, d/b/a [doing business as] Snia Viscosa." Avandero was named as "Avandero, S.A.S." Although each moving defendant points to the incorrect spelling or incomplete names as symptomatic of the deficiencies generally in plaintiff's claims, neither suggests that the imprecision of plaintiff's caption amounts to in-

sufficient notice and a violation of due process. Avandero does contend that *service* of process was fatally defective, see discussion *infra*. Societa does not challenge the validity of the service of process on it through Mr. Oelbaum. And, of course, whether or not Societa is in fact "doing business as Snia Viscosa" is a matter which is not decided by plaintiff's choice of caption in his complaint.

3. Each is organized under the laws of the Republic of Italy, Societa as a corporation and Avandero as a limited partnership.

**1242**

F.Supp. 307, 309 (S.D.N.Y.1975), quoting *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 192–93 (E.D.Pa. 1974); *see also Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972).[4]

In opposition to Societa's motion to dismiss Top Form asserts that Societa is subject to this court's jurisdiction because it is "doing business" in New York sufficient to satisfy the jurisdictional requirements of Section 301 of the New York Civil Practice Law and Rules (McKinney 1963) ("CPLR").[5] As set forth below, this court finds that Societa is in fact doing business in New York by virtue of the activities of its subsidiary, Snia Viscosa, Inc.

■■ As its fundamental explication of the "doing business" principle by which a foreign corporation may be subjected to *in personam* jurisdiction in New York, the New York Court of Appeals has held that while "there is no precise test of the nature or extent of the business that must be done" by the foreign defendant, it must conduct business activities here "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Once the foreign defendant is found to be doing business here, it is present and subject to *in personam* jurisdiction for all purposes, for "jurisdiction does not fail because the cause of action has no relation in its origin to the business [here] transacted." *Id.*, at 268, 115 N.E., at 918.

■■ Because there is no single factor dispositive of the "doing business" question, "[e]ach case necessarily depends on its own facts." *Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 21 A.D.2d 73, 248 N.Y.S.2d 273, 275 (1st Dept. 1964), *aff'd*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). Here the existence of the parent-subsidiary relationship between Societa and Snia Viscosa, Inc. ("Snia") necessitates a close factual scrutiny of the nature of Snia's business and of its connections with Societa. Although the parent-subsidiary relationship is not *per se* sufficient to establish personal jurisdiction over the foreign parent, *Cannon Mfg. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Simonson v. International Bank*, 16 A.D.2d 55, 225 N.Y.S.2d 392 (1st Dept.), aff'd, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1962), New York courts have regularly held that the activities of a New York subsidiary can in certain circumstances be attributed to, and thus give rise to jurisdiction over, its foreign parent.

One such circumstance has traditionally been found where the New York subsidiary, though independent of the parent affiliate, "does all the business which [its parent] could do were it here by its own officials." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854 (1967); *see Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967). In addition, if the local subsidiary may be considered in fact a "mere department" of its foreign parent rather than "a really independent entity", personal

---

4. The court has considered the following documents in addition to the pleadings in deciding Societa's motion to dismiss for lack of personal jurisdiction: two affidavits of Luigi Santamaria, president of Societa, dated January 16 and May 13, 1976; two affidavits of Samuele Azaria, officer and director of Snia Viscosa, Inc., dated January 16 and May 3, 1976; Mr. Azaria's deposition dated February 11, 1976; the deposition of Mr. Robert Oelbaum, assistant secretary and comptroller of Snia Viscosa, Inc., dated April 6, 1976; the affidavit of Mr. Manny Kay, president of Top Form, dated April 9, 1976; and exhibits thereto.

On Avandero's Rule 12(b)(2) motion the following documents have been considered: the affidavit of Mr. Gianfranco Broschetti, a limited partner of Avandero, dated December 11, 1975; the deposition of Mr. Ivan Mandukich, Avandero's New York agent, dated January 22, 1976; the deposition of Mr. Marvin Rosten, import traffic manager of Leyden Customs Expediters, dated March 2, 1976; the affidavit of Ms. Lise Curry, secretary to Mr. Mandukich, dated December 12, 1975; the affidavit of Mr. Manny Kay, dated April 26, 1976; and exhibits to the foregoing documents.

5. The "transacting business" test under § 302 of the CPLR is not here involved, for there is no allegation that this cause of action "arose" from any business transacted within New York.

jurisdiction over the foreign corporation will be upheld. *Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 102, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965); *Public Administrator of County of New York v. Royal Bank of Canada*, 19 N.Y.2d 127, 132, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967). *See Tokyo Boeki (U.S.A.) Inc. v. S.S. Navarino*, 324 F.Supp. 361, 366 (S.D.N.Y.1971). These general principles were reaffirmed in *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972). The Court of Appeals there found that the relationship between the foreign corporate defendant and an unaffiliated New York company satisfied neither the jurisdictional rule of *Frummer, supra*, requiring the valid inference of an agency relationship, nor the rule set forth in *Taca, supra*, requiring a showing of such control by the parent that the local subsidiary is its "mere department." *Delagi v. Volkswagenwerk A.G., supra*, 29 N.Y.2d at 430–32, 433, 328 N.Y.S.2d 653, 278 N.E.2d 895.

The particular facts of the instant case must now be examined in light of the foregoing principles. Snia Viscosa, Inc., ("Snia") was incorporated on January 1, 1974 as the wholly-owned New York subsidiary of Societa. Snia's directors are Mr. Samuele Azaria, Mr. Luciano Titta, and Mr. Robert Moss. Mr. Azaria, an Italian citizen residing in New York City, has been the executive vice-president of Snia since its incorporation. Prior to that time Mr. Azaria had been employed by Societa for twenty-four years, most recently as its sales manager for Eastern Europe and Asia. Mr. Titta, an Italian citizen and resident, is also an officer of Societa. Neither Mr. Titta nor Mr. Moss, an attorney practicing in New York, is active in the daily commercial management of Snia, which is the responsibility of Mr. Azaria. Societa personnel regularly visit the offices of Snia. They include Mr. Titta, a Mr. Arduino, Societa sales manager for the United States, and a Mr. Penacchi, a Societa officer who has visited Mr. Azaria on at least one occasion.

Snia also employs certain key individuals who were managers of the Wilgreene Yarn Company ("Wilgreene"), a now-defunct New York company which was formerly Societa's exclusive New York sales agent.[6] Mr. Robert Oelbaum, who has been the manager, traffic controller, financial comptroller and assistant secretary of Snia since its incorporation, was employed in the same capacities by Wilgreene for several years prior to its demise. Mr. Green, formerly an officer of Wilgreene, is also now employed by Snia.[7] There is thus an extensive interweaving of managerial personnel between Societa and Snia and from Wilgreene to Snia.

**6.** Wilgreene ceased all activities for Societa on December 31, 1973, one day before Snia was incorporated. For at least five years prior to that date Wilgreene, in its capacity as sales agent, had solicited customers for Societa, arranged for sales of Societa's products, processed cargo shipments from Societa in New York for delivery to customers, and handled Societa's accounts receivable in New York. Wilgreene in addition received customers complaints and passed them on to Societa, which sent its own technicians to the United States to investigate. Wilgreene also acted as New York agent for Novaceta, a subsidiary owned jointly by Societa and Italviscosa, another affiliate of Societa's.

It is thus evident that at least until December 31, 1973 Societa would have been subject to *in personam* jurisdiction by virtue of the activities of its agent Wilgreene, for these activities went beyond mere solicitation and satisfied New York's "solicitation-plus" requirement. *See Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Elish v. St. Louis Southwestern Ry.*, 305 N.Y. 267, 112 N.E.2d 842 (1953); *cf. Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). Although all sales were subject to confirmation by Societa, it is plain that the tasks performed by Wilgreene as Societa's agent, including acting as New York supervisor and coordinator of solicitation, contract preliminaries, cargo shipments, customer complaints and Societa's accounts receivable, extended well beyond "essentially mechanical tasks," *cf. Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 212 (2d Cir. 1970), and constituted "doing business" by Societa. *See Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967).

**7.** In addition, a secretary formerly employed by Wilgreene now works for Snia.

Snia's business consists of the purchasing and importing of yarns and fibers supplied by Societa for resale to American weavers and knitters. 80% of Snia's goods are purchased directly from Societa itself, and the rest is purchased from other suppliers, all of which are wholly or partially owned by Societa and which together with Societa comprise the "SNIA Group." [8] Thus, all of Snia's income derives from the sale of goods manufactured by Societa or other Societa subsidiaries. Societa has established with Snia that Societa will fill all Snia's orders for fabric as long as Snia continues to make a profit. Snia pays for goods from Societa upon physical receipt of the shipments in the United States and resells them at prices it sets. In response to customer complaints of defective goods either Snia or Societa will dispatch a technician in its employ to the customer's plant to investigate the claimed defect.[9]

The same "SNIA" logo is used on invoices sent to customers from both Snia and Societa. On its own invoices, which also explicitly declare it to be a member of the SNIA Group, Snia is listed as New York "area representative." In the circumstances of this corporate relationship the decision to incorporate the subsidiary responsible for sales in New York under the name Snia Viscosa, Inc., employing the acronym for the parent Societa Nazionale Industria Applicazioni Viscosa already widely used by the SNIA Group, permits the inference of a deliberate decision to advertise the uniformity of product quality, the regularity of purchase and delivery procedures, and the identity of interest between the companies, for the use of this acronym "strongly connote[s] the same entity." *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519, 530 (S.D.N.Y.1972). This intentional similarity in name might be without significance if the corporations were completely separate entities without common owners, directors or managers but such is not the case where, as here, commonly-owned companies maintain overlapping boards of directors, have passed on managerial personnel, and deliberately draw attention to the fact of their joint enterprise. *Sunrise Toyota, Ltd. v. Toyota Motor Co., supra,* 55 F.R.D. at 529–530; *SCM Corp. v. Brother International Corp.,* 316 F.Supp. 1328, 1333 (S.D.N.Y. 1970).

Supporting this inference that Snia is but an extension of Societa into New York is the fact that the dealings of plaintiff Top Form with Snia are nearly indistinguishable from those done directly with Societa. Top Form purchases fabric manufactured by Societa or a SNIA Group member from each, and Top Form is assigned the same customer account number by each ( # 88465). The fact that title to goods formally passes from Societa to Snia in inter-company transactions and that the companies maintain separate bank accounts, though suggesting the appearance of corporate separateness, does not alter the reality of the "unity and singularity of the [SNIA] network." *SCM Corp. v. Brother International Corp., supra,* 316 F.Supp. at 1332. Under all these circumstances it is clear that each corporation "functions as an integral part of a united endeavor. . . . [W]hile two separate corporate entities have been established, only one commonly owned enterprise exists which, in order to function, must rely upon the joint endeavors of each constituent part." *Freeman v. Gordon & Breach, Science Publishers, Inc.,* 398 F.Supp. 519, 522 (S.D.N.Y.1975). *See also Boryk v. deHavilland Aircraft Co.,* 341 F.2d 666, 668 (2d Cir. 1965).

It may be that the facts before this court do not establish that Societa's control over

8. The record reveals that the SNIA Group includes at least the following entities, each of which is formally an independent organization: Snia Viscosa, Inc., wholly owned by Societa; Snia Ireland, Ltd., wholly owned by Societa; Italviscosa, partially owned by Societa; Novaceta, jointly owned by Societa and Italviscosa; and Snia U.K.

9. Societa claims that the routine procedure is for Snia to send its own technician, although at the time of Mr. Azaria's deposition a Societa technician, paid by and accountable to Societa, had recently spent a week here investigating a customer complaint of goods sold by Snia.

Snia is "so complete that the subsidiary is, in fact, merely a department of the parent." *Delagi v. Volkswagenwerk A.G., supra,* 29 N.Y.2d at 433, 328 N.Y.S.2d at 657, 278 N.E.2d at 897. *See Baird v. Day & Zimmerman, Inc.,* 390 F.Supp. 883 (S.D.N.Y. 1974); *cf. Public Administrator of County of New York v. Royal Bank of Canada, supra; Taca International Airlines, S. A. v. Rolls–Royce of England, Ltd., supra.*

■ However, in light of the circumstances of the Societa-Snia relationship, this court is convinced that the New York subsidiary "does all the business which [Societa, the parent] could do were it here by its own officials," *Frummer v. Hilton Hotels, Inc., supra,* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 854, thus giving rise to a valid inference of an agency relationship and the proper assertion of *in personam* jurisdiction over Societa. *See Delagi v. Volkswagenwerk A. G., supra,* 29 N.Y.2d at 432, 328 N.Y.S.2d 653, 278 N.E.2d 895. The permissible inference of an agency relationship is in this case buttressed by the substantial evidence outlined above which strongly suggests that Snia has simply replaced Wilgreene Yarn Co., which was undisputedly Societa's agent in New York, and has effectively taken over the functions formerly fulfilled by that company.

The distinctive factual circumstances which were held not to constitute any agency relationship between the New York corporation and the foreign defendant in *Delagi, supra,* are plainly distinguishable. In that case the defendant, Volkswagenwerk A.G. of Wolfsburg ("VWAG"), exported its automobiles into the United States to Volkswagen of America, Inc. ("VWoA"), a New Jersey corporation which was a wholly-owned subsidiary of VWAG. Neither VWAG nor VWoA was qualified to do business in New York, and neither had an office or place of business here. Upon receipt of the cars at various ports, none of which were in New York, VWoA resold them to various wholesale distributors franchised by VWoA. One of these distributors was World-Wide Volkswagen Corp. ("World-Wide"), an independent New York corpora-

tion owned entirely by investors unrelated to either VWAG or VWoA. World-Wide took title to the vehicles at the delivery point and, in turn, reshipped them to local independent franchised dealers. The plaintiff attempted to assert jurisdiction over defendant VWAG by claiming it was "doing business" in New York by virtue of the activities of World-Wide, its alleged agent. However, in view of the fact that World-Wide was an independently owned corporation, in no way related to VWAG and related to VWoA only by way of the contractual distributor agreement, the Court of Appeals held, "where, as here, there exists truly separate corporate entities, not commonly owned, a valid reference [*sic*] of agency cannot be sustained." *Id.,* at 432, 328 N.Y. S.2d at 656, 278 N.E.2d, at 897.

Here, by contrast, Societa and the Snia Group (*see* note 8, *supra*), of which Snia Viscosa, Inc., is the New York representative, constitute a tightly-knit commercial organization of commonly-owned entities which manufacture their products in Europe and distribute them directly to New York by means of the activities of Snia, successor to Societa's exclusive New York agent, Wilgreene Yarn Company. § 301 jurisdiction may thus be asserted over Societa because present here are the elements of common ownership *and* the performance of essential services by the New York corporation found lacking in *Delagi, supra. Meat Systems Corp. v. Ben Langel-Mol, Inc.,* 410 F.Supp. 231, 234 (S.D.N.Y.1976).

■ In conclusion, the foregoing facts establish that Snia was created solely to serve the necessary interests of Societa in New York, and that that is precisely what Snia does. This court concludes that Snia "does all the business which [Societa] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l, Inc., supra,* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 854. "Whatever the advantages of limited liability or taxation this structure may have, under New York law it does not insulate the parent from suit, for [Societa] is doing business here through [Snia]." *Sunrise Toyota, Ltd., supra,* 55 F.R.D. at

530. Accordingly, Societa is subject to the *in personam* jurisdiction of this court under CPLR § 301. *Frummer, supra; Gelfand v. Tanner Motor Tours, Ltd., supra,* 385 F.2d at 120–121; *Meat Systems Corp. v. Ben Langel-Mol, Inc., supra,* 410 F.Supp. at 233–234; *Freeman v. Gordon & Breach, Science Publishers, Inc., supra,* 398 F.Supp. at 522; *Sunrise Toyota, Ltd. v. Toyota Motor Co., supra,* 55 F.R.D. at 530. *Cf. Delagi v. Volkswagenwerk A.G., supra.* Societa's motion to dismiss is therefore denied.[10]

### Avandero

#### Rule 12(b)(2)

On the motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P., made by defendant Fratelli Avandero, S.A.S. ("Avandero"), the parties agree that, as in the Societa motion, the question presented is whether the movant has sufficient contacts with New York to meet the "doing business" test of CPLR § 301.[11] As was the case with Societa, a decision concerning Avandero's amenability to the jurisdiction of this court depends on a close examination of the activities of local New York agents. The jurisdictional matter to be decided on Avandero's motion, unlike Societa's, involves the business conducted by the foreign defendant's sales agent, not its corporate subsidiary. Accordingly, the specific issue to be determined on Avandero's claim of lack of personal jurisdiction is whether Avandero's New York agent performed activities in addition to mere solicitation of business sufficient to invoke New York's "solicitation-plus" rule, as analyzed in *Aquascutum of London, Inc. v. S. S. American Champion,* 426 F.2d 205 (2d Cir. 1970). That rule, as developed by the courts of New York, is the principle by which personal jurisdiction may be asserted over foreign corporations in conformity with the jurisdictional policy enunciated by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, at 314, 66 S.Ct. 154, at 157, 90 L.Ed. 95 (1945): "[S]olicitation within a state by the agents of a foreign corporation plus some additional activities there are sufficient to render the corporation amenable to suit" in that state. *Elish v. St. Louis Southwestern Ry. Co.,* 305 N.Y. 267, 112 N.E.2d 842 (1953); *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Scanapico v. Richmond, Fredericksburg & Potomac R. Co.,* 439 F.2d 17, *aff'd en banc,* 439 F.2d 25 (2d Cir. 1970); *see* footnote 6, *supra.*

▮▮▮ Avandero's principal place of business is in Biella, Italy. Its limited partners are Fedele Avandero, Elvezio Boschetti and Gianfranco Boschetti, all Italian citizens and residents. It is not licensed or authorized to do business in New York, nor does it maintain an office or own property here. Avandero operates a freight forwarding agency which prepares and expedites shipments of goods originating in the Republic of Italy for delivery to other countries, including the United States. At all times relevant to this lawsuit,[12] Avandero

---

**10.** Assertion of *in personam* jurisdiction over Societa comports with federal requirements of constitutional due process, for the facts make clear that Societa has "certain minimum contacts with [New York] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). It is clear that Societa has "purposefully avail[ed] itself of the privilege of conducting activities within [this] forum . . ." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

**11.** Top Form again relies solely on the § 301 "doing business" test and does not contend that the "transacting business" rule under § 302 permits assertion of personal jurisdiction over Avandero.

**12.** There is no claim made by Avandero that Mandukich was not in its employ at all relevant times. The reference point for determining corporate "presence" by virtue of doing business in New York is the time of the commencement of the action. *See Gaboury v. Central Vermont Ry. Co.,* 250 N.Y. 233, 165 N.E. 275 (1929); *Propulsion Systems, Inc. v. Avondale Shipyards, Inc.,* 77 Misc.2d 259, 260, 352 N.Y.S.2d 749 (Sup.Ct.N.Y.Co.1973). Top Form filed its complaint with the court on October 7, 1975 and Mr. Mandukich continued as agent for Avandero at least until January 22, 1976.

employed two agents in New York, Mr. Ivan Mandukich and Leyden Customs Expediters. Mr. Mandukich was an independent sales agent whose activities concededly included solicitation of business on behalf of Avandero. Leyden Customs Expediters was Avandero's New York custom house broker which effected the distribution of goods and accompanying shipping documents to the proper consignees once an Avandero shipment had arrived in New York. As discussed more fully below, although the service provided by Leyden Customs Expediters for Avandero appears insufficient to establish Avandero's jurisdictional presence in New York,[13] the activities performed by Mandukich on Avandero's account went beyond the mere solicitation of business and permit the conclusion that Avandero was doing business in New York. Avandero is thus amenable to *in personam* jurisdiction here, and its motion must be denied.

Mr. Mandukich is self-employed, and since March of 1973 continuously represented Avandero as its New York sales agent. He maintained an office at 960 Avenue of the Americas, Manhattan, out of which he conducted many of the activities performed for Avandero in addition to the business of Zema International, Inc., his own corporation. On the door to his office the single word "Avandero" was listed as a business name along with "Zema International Incorporated," and "Avandero" was listed similarly on the central directory in the lobby of the building. "Avandero, U.S.A." was also registered in the New York telephone directory, the telephone number being the same as that listed for Zema International, Inc.

The principal service Mandukich provided Avandero was the solicitation of customers for its forwarding business. Acting pursuant to directions sent him by Avandero or based on his own independent inquiries, Mandukich first located companies engaged in the purchase and importing of goods from Italy. He then approached these companies to offer the services of Avandero and to ascertain the type of merchandise and frequency of shipments in which they dealt. Upon obtaining the pertinent information Mandukich would send it to Avandero, which would establish forwarding rates applicable to the particular customer's specifications as furnished by Mandukich. These shipping rates were then telexed back to Mandukich in New York, whereupon he would approach the potential client with the proposed delivery and rate schedule.

Beyond this routine solicitation Mandukich was authorized by Avandero to bind it contractually by confirming customer acceptances of proposed rates. Subsequent to such confirmation by Mandukich the New York client would sign a routing order which Mandukich would then mail to Avandero. Upon receipt Avandero presented the order to the Italian supplier of the merchandise and received the goods for shipment. Avandero shipped the goods to various United States ports, including New York, and consigned them either to the local purchaser itself or to a designated freight broker.

In addition to solicitation and confirmation of orders, Mandukich's responsibilities included overseeing shipments until they had arrived and had been delivered to the customer without incident. He routinely maintained copies of all pertinent shipping documents (bills of lading and correspondence among Avandero, the local customers, Leyden Customs Expediters and himself),

---

**13.** Leyden Customs Expediters simply transfers the documents and merchandise shipped by Avandero from the delivery pier to the proper consignees in exchange for their remittances, which are forwarded to Avandero. Leyden is regularly paid for its services by the consignees, not by Avandero; it receives instructions from the consignees, not from Avandero; and only once a year does a representative of Avandero visit Leyden in New York to discuss business. Although Leyden does informally recommend Avandero to clients, its activities do not satisfy the New York "solicitation-plus" requirement, for they amount only to "essentially mechanical tasks" found insufficient in *Aquascutum of London, Inc. v. S. S. American Champion*, 426 F.2d 205, 212 (2d Cir. 1970).

and when a change in schedule or destination was necessitated Avandero notified Mandukich of the change and he in turn would immediately inform the customer. Similarly, if the customer had a problem with a delivery Mandukich would be notified, and if he could not himself resolve the difficulty he would forward the complaint to Avandero. As always, Avandero would communicate with Mandukich and he would relay its response to the customer. On occasion Mandukich was directed to collect payment due Avandero from its New York customers, and he regularly received checks in payment for Avandero's services to forward to Avandero in Italy.

Although there is no allegation that he ever in fact transacted business for defendant Avandero as its corporate subsidiary, Mandukich did regularly hold himself out as "Avandero (USA), Inc." in the conduct of that business. He and his assistant, Ms. Lise Curry, routinely used stationery bearing the caption "Avandero (USA), Inc." and each signed correspondence over the typed name "Avandero (USA) Inc." even when not using the stationery. Mandukich had been provided this stationery by defendant Avandero, which itself used a standardized invoice form prominently displaying the name and address "Avandero (USA), Inc.— New York" among a list of nine multinational "Avandero"-related commercial entities.[14]

The part Mandukich played in the shipment to plaintiff Top Form at issue in this case is illustrative of some of the activities he regularly performed for Avandero which exceeded mere solicitation of business. Although Mandukich did not solicit Top Form's business on this occasion his participation subsequent to the contractual agreement between Top Form and Avandero was significant. On February 24, 1975 he notified Top Form that Avandero had received the first shipment of fabric from Societa already packaged and in unsatisfactory condition, and that Avandero was putting Top Form on notice that it would not be held responsible for it. The communication took the form of a cover letter to Top Form with an attached copy of the message sent by Avandero. Mandukich's letter commenced, "we enclose a copy of a telex message received today from *our* Milan office," [emphasis added], and concluded, as did all his communications concerning defendant Avandero, with the typed closing under his signature, "Ivan S. Mandukich, AVANDERO (USA), INC." Mandukich also made several phone calls to Mr. Kay of Top Form and later, acting under directions received from Avandero, he notified Top Form of a change in the arrival dates of the shipment from Societa.

Mandukich also sent Top Form an invoice from Avandero for $6,363.00, the cost of the ocean freight from Antwerp to Norfolk, and asked that a certified check in that amount be submitted immediately. In response to this directive from Mandukich, which read, "we are enclosing *our* Invoice . . ." [emphasis added] and was signed Avandero (USA), Inc., Top Form mailed Mandukich a certified check made to the order of "Avandero (USA), Inc." Upon receipt of the check Ms. Curry endorsed it as follows: "Avandero, (USA) Inc: For Deposit to the A/C of Fratelli Avandero, S.A. S." She then mailed it on to Avandero in Milan with an explanatory note written on Avandero (USA), Inc. stationery, stating in part that "we have endorsed [the check] with our name for deposit to your account, so as not to incur any additional delay . . ."

14. It is claimed that Mandukich and the principals of Fratelli Avandero, S.A.S., had at one time hoped to incorporate the New York operation under the name "Avandero (U.S.A.), Inc." They went so far as to reserve that as a corporate name, prepared stationery for Mandukich bearing that caption, and included it among affiliates on Avandero documents, as noted above. Mandukich and Avandero continued to make regular business use of the documents and stationery carrying that name even after a decision was made not to incorporate the organization. Although Mandukich claimed that all customers with whom he corresponded on such stationery knew that he was an independent agent for Avandero, he admitted that he had never informed any of Top Form's principals that "Avandero (U.S.A), Inc.," did not exist.

From the foregoing facts this court must conclude that the activities Mr. Mandukich and Ms. Curry performed in New York on behalf of defendant Fratelli Avandero, S.A.S., amount to more than mere solicitation of business and thus constitute "doing business" by Avandero sufficient to subject it to the jurisdiction of this court. *See, Bryant v. Finnish National Airline, supra*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Elish v. St. Louis Southwestern Ry. Co., supra*, 305 N.Y. 267, 112 N.E.2d 842 (1953); *International Shoe Co. v. Washington, supra*, 326 U.S. 310, 314, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As noted in this Circuit's leading case concerning the amenability of foreign freight forwarders to New York jurisdiction, *Aquascutum of London, Inc. v. S. S. American Champion, supra*, 426 F.2d 205, 211 (2d Cir. 1970),

> The New York cases on when a foreign carrier is "doing business" in New York reveal that while the "solicitation-plus" rule is adhered to, once solicitation is found in any substantial degree very little more is necessary to a conclusion of "doing business." [citations omitted]

In *Aquascutum, supra*, an English corporation offering freight service similar to that provided by Avandero was held not to be doing business in New York when its "activities in New York in addition to soliciting orders amount[ed] to nothing more than paying persons to perform essentially mechanical tasks for it." *Id.*, at 212. The principal contacts maintained by it with New York consisted simply of solicitation of business for itself by occasional visits by its own officials and through informal recommendations provided by a New York customs broker; the maintenance of contracts for the delivery of goods to New York; and the hiring of New York break-bulk agents to physically transfer the goods from the delivery pier to the consignees. The *Aquascutum* court noted that the New York cases "which find personal jurisdiction under the 'solicitation-plus' rubric have involved either some financial or commercial dealings in New York [citations omitted], or the defendant's holding himself out as operating in New York, either personally or

through an agent [citations omitted]," *id.* at 212, and concluded that those critical factors were absent from the circumstances before it.

By contrast, in the case of defendant Avandero it is clear that there are involved *both* commercial dealings in New York *and* the defendant's holding himself out as operating in New York. As set forth above, Mandukich maintained an office address and telephone listing in Manhattan under the name "Avandero", and was authorized under certain circumstances to confirm contracts in New York for Avandero's services. He received copies of all documents and correspondence relating to individual shipments by Avandero, acted as Avandero's New York overseer of these shipments, and answered or processed complaints from customers. On occasion he collected payments due Avandero. Avandero clearly held itself out as operating in New York through its agent by its continued use of the name "Avandero (USA), Inc." when addressing or referring to the business organization Mandukich operated in New York on its behalf. The deliberate and unvarying use of the name of this phantom entity is a significant indication of the intent to display to New York customers both the close nature of the Avandero-Mandukich relationship and the presence and accessibility of the Avandero enterprise in New York. *See Sunrise Toyota, Ltd. v. Toyota Motor Co., supra*, 55 F.R.D. at 530. Activities similar to these have been held sufficient in their aggregate connection with New York to constitute doing business here. *See, e. g., Gelfand v. Tanner Motor Tours, Ltd., supra*, 385 F.2d 116; *Bryant v. Finnish National Airline, supra*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439; *Johannesen v. Gulf & South American Steamship Co.*, 126 F.Supp. 664; *Elish v. St. Louis Southwestern Ry. Co., supra*, 305 N.Y. 267, 112 N.E.2d 842. Most importantly, they provide here the two critical elements of contact between the foreign defendant and New York found lacking in *Aquascutum, supra*: commercial dealings in New York and Avandero holding itself out as operating here through an agent.

Thus, it is clear that the activities performed by Mandukich in New York differ both in scope and quality from the "essentially mechanical tasks" found insufficient in *Aquascutum, supra,* 426 F.2d at 212, and satisfy the "solicitation-plus" rule applicable to foreign freight forwarders there addressed. Given the undisputed evidence of the agency relationship between Avandero and Mandukich, the extent of Mandukich's authority, and the quantity and variety of functions performed and contacts maintained for Avandero in New York under the names "Avandero" and "Avandero (USA), Inc.," Avandero must be considered to be doing business in New York and is subject to the *in personam* jurisdiction of this court. *See Bryant, supra; Gelfand, supra; Elish, supra; see also Scanapico v. Richmond, Fredericksburg & Potomac Ry. Co.,* 439 F.2d 17 *aff'd en banc,* 439 F.2d 25 (2d Cir. 1970); *Vantage Steamship Corp. v. Rachel V. Steamship Corp.,* 31 A.D.2d 518, 294 N.Y. S.2d 816 (1st Dept. 1968), *aff'd,* 25 N.Y.2d 984, 305 N.Y.S.2d 504, 253 N.E.2d 217 (1969); *cf. Aquascutum, supra; Lumbermens Mutual Casualty Co. v. Borden Co.,* 265 F.Supp. 99 (S.D.N.Y.1967).

Avandero's motion to dismiss for lack of *in personam* jurisdiction is accordingly denied.[15]

*Rule 12(b)(5)*

Avandero also moves to dismiss the complaint for insufficient service of process pursuant to Rule 12(b)(5), Fed.R.Civ.P. On October 10, 1975 a United States Marshal personally served a copy of the summons and complaint addressed to "Avandero S.A.S., 960 Avenue of the Americas, New York, N.Y." on Ms. Lise Curry at the address specified. Avandero contends that even if it is subject to the *in personam* jurisdiction of this court, personal service on Ms. Lise Curry does not qualify as sufficient service of process on it. On the facts before it, however, this court rejects Avandero's contention and finds the challenged personal service to be proper service on Avandero.

■ The sufficiency of the personal service on Ms. Curry must be determined according to Rule 4(d), Fed.R.Civ.P.[16] Pursuant to that rule service could only have been made upon an officer, or a managing or general agent of Avandero, or upon any authorized agent. It is firmly established that, in the case of a foreign corporation or partnership found to be doing business in New York by virtue of the activities of its local agent, proper service of process on that agent is considered valid service on the foreign defendant. *Bomze v. Nardis Sportswear,* 165 F.2d 33 (2d Cir. 1948); *Greene v. Swissair Transport Co.,* 33 F.R.D. 13 (S.D.N.Y.1963); *Johannesen v. Gulf & South American Steamship Co., supra,* 126 F.Supp. at 665. Thus, if the personal service of process made on Ms. Lise Curry constitutes valid service of process on Avandero's New York agent through which it is doing business here, defendant Avandero itself had been properly served, *pro hac vice.*

The record indicates that Mr. Mandukich's agency was a two-person organization, consisting of himself and Ms. Curry. The Marshal personally served Ms. Curry in the Manhattan office which has the name

---

15. Federal due process requirements are plainly satisfied by the facts before the court. As with Societa, Avandero has sufficient "minimum contacts" with New York to satisfy the rule of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. *See* footnote 10, *supra.*

16. Rule 4(d), Fed.R.Civ.P., reads in pertinent part:
 [Rule 4]:
 (d) *Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:
 \* \* \* \* \* \*
 (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

"Avandero" on the door. At the time she accepted service of process for Avandero Ms. Curry was working as Mr. Mandukich's secretary, and her specific responsibilities included significant activities undertaken on Avandero's behalf. It was she who endorsed to the account of Fratelli Avandero, S.A.S. the certified check submitted by Top Form to the order of Avandero (USA), Inc.; it was she who wrote, signed and sent the related explanatory letters to Avandero; it was either she or Mr. Mandukich who entered the Avandero U.S.A. listing in the New York telephone directory. The Marshal noted on his return that Ms. Curry was in charge of the "Avandero" office when he arrived there to serve the summons and complaint, and the accuracy of the Marshal's recorded description of her status has not been disputed.

 In assessing the foregoing facts it must be borne in mind that compliance with the rules governing service of process is to be construed in a manner reasonably calculated to effectuate their primary purpose: to give the defendant adequate notice that an action is pending. *Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839 (S.D.N.Y.1971); *see International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *see also Albert Levine Associates, Inc. v. Hudson*, 43 F.R.D. 392, 394 (S.D.N.Y.1967). Consequently, the rule does not require that service be made solely on a restricted class of formally titled officials, but rather permits it to be made " 'upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.' [cita-

tions omitted]" *Montclair Electronics, Inc. v. Electra/Midland Corp., supra*, 326 F.Supp. at 842.

 In view of Ms. Curry's responsibilities and the indications that she and Mandukich alone did much, if not all, of the business activities done for Avandero, it may properly be inferred that she was in practical effect, if not formal title, an assistant manager of the affairs of Avandero's New York agency, and not a mere clerical employee. In these circumstances, it is eminently reasonable to consider her "a representative so integrated with the organization . . . as to render it fair, reasonable and just to imply the authority on [her] part to receive service" on behalf of Avandero's New York agent. *Montclair Electronics, Inc., supra*, 326 F.Supp. at 842. *See Car Freshner Corp. v. Broadway Mfg. Co.*, 337 F.Supp. 618, 620 (S.D.N.Y.1971); *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F.Supp. 622, 626 (S.D.N.Y.1969); *Geiss-America v. Fraser*, 21 F.R.D. 320 (S.D.N.Y. 1958); *Kamen Soap Products Co. v. Struthers Wells Corp.*, 159 F.Supp. 706, 710–711 (S.D.N.Y.1958); *Koninklijke Luchtvaart Maat. v. Curtiss-Wright Corp.*, 17 F.R.D. 49 (S.D.N.Y.1955). An additional fact to be considered in the determination that valid service has been made is that Ms. Curry did eventually notify Mandukich that legal process addressed to Avandero had been received in the office.[17] *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *Nichols v. Surgitool, Inc.*, 419 F.Supp. 58, 63 (W.D.N.Y.1976).

Upon considering all the foregoing facts this court holds that service of process on Avandero's New York agent was valid. Consequently, service was also valid on defendant Avandero itself, *Bomze v. Nardis Sportswear, supra*, and its motion to dismiss for insufficient service of process must be denied.

---

**17.** This conclusion, never expressly admitted by Mandukich, is properly drawn from his answers to the following questions concerning service of process:

> Q Mr. Mandukich, did you receive a copy of the summons and complaint in this action from a U.S. Marshal?

> A Personally, no.
> Q Who received it, do you know?
> A My secretary at the time, Miss Lise Curry.

*Forum non conveniens*

The final ground upon which defendant Avandero urges dismissal of the action against it is that of *forum non conveniens*, the doctrine by which a court may decline to proceed with an action, despite proper venue and jurisdiction, in the interest of the convenience of litigants and witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). As noted by the Supreme Court, *id.*, at 508, 67 S.Ct. at 843,

> ". . . it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts. . . . An interest to be considered, . . . is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive . . . The court will weigh relative advantages and obstacles to a fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. [footnotes omitted].

In the exercise of its discretion, after weighing all the circumstances of the parties in the instant case, this court denies Avandero's motion to dismiss for *forum non conveniens*.[18]

The defendant points to numerous factors it claims require dismissal of the action against it. It is alleged that the contract between Top Form and Avandero was negotiated and signed in Italy; that the civil law of Italy governs the rights and duties of the parties; that defendant's witnesses reside in Italy and speak Italian; that the bulk of defendant's exhibits and documentary evidence is located in Italy and is in Italian. Avandero contends that if the action is continued in this court the expense, delay, and inconvenience unavoidably caused by these circumstances will be so burdensome as to gravely prejudice its rights.

Although Avandero's arguments clearly indicate the strong possibility that it will be inconvenienced if required to litigate Top Form's complaint in this forum, that showing is insufficient to compel dismissal of Top Form's action against it. The right of Top Form, a New York corporation doing business here, to choose this court as the forum in which to sue Avandero, a foreign partnership also doing business here, must be considered in light of this Circuit's recognition that

> courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercis-

---

**18.** Avandero's reliance on 28 U.S.C. § 1404(a) as statutory authority for *forum non conveniens* dismissal is misplaced. § 1404(a) provides only for *transfer* from one federal forum where venue is proper to another such federal forum; it does not authorize dismissal. § 1404(a) was enacted subsequent to *Gulf Oil Corp. V. Gilbert, supra*, and was intended to permit courts to grant transfers upon a lesser showing of inconvenience than is required for dismissal pursuant to forum non conveniens. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). As the Supreme Court acknowledged in *Norwood*, 349 U.S. at 31, 75 S.Ct. at 546, quoting *All States Freight v. Modarelli*, 196 F.2d 1010, 1011 (3rd Cir. 1952),

> "The *forum non conveniens* doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. . . . ."

ing any such discretion to deny a citizen access to the courts of this country.

*Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1344 (2d Cir. 1972), quoting *Burt v. Isthmus Development Co.*, 218 F.2d 353, 357 (5th Cir.), *cert. denied*, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955); *see Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645–646 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956).

▬ Even if Italian law were to control the substantive issues between Top Form and Avandero, an issue not decided here, the need to apply foreign law is not in itself a sufficient reason to apply the doctrine of *forum non conveniens. Olympic Corporation v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972); *Burt v. Isthmus Development Co., supra*, 218 F.2d at 357; *Ciprari v. Servicos Aereos Cruzeiro do Sul, S.A.*, 232 F.Supp. 433, 442–443 (S.D.N.Y. 1964). The fact that witnesses for the defendant located in Italy may have to be called here to testify at some expense and inconvenience similarly does not compel dismissal. Trial in Italy would require Top Form to shoulder the equally onerous burden of transporting its witnesses to that country, and it is conceded that Avandero officials occasionally visit New York. *Thomson v. Palmieri*, 355 F.2d 64, 66 (2d Cir. 1966); *Ciprari v. Servicos Aereos Cruzeiro, supra*, 232 F.Supp. at 443. Although the record lacks specific information, it appears that this is not a case involving extremely voluminous records or numerous witnesses. It also appears that insofar as relevant Italian witnesses are employees of defendant Avandero there is no serious question raised concerning the availability of compulsory process, *Latimer v. S/A Industrias Reunidas F. Matarazzo*, 91 F.Supp. 469, 471–472 (S.D.N.Y.1950), and that if necessary examination in Italy by letters rogatory may be possible. *Thomson v. Palmieri, supra*, 355 F.2d at 66.

▬ Numerous cases analyzing *forum non conveniens* claims indicate that great weight must be given to the fact that the plaintiff is a United States citizen and New York resident. *Leasco Data Processing Equipment Corp. v. Maxwell, supra; Olympic Corporation v. Societe Generale, supra; Ciprari v. Servicos Aereos Cruzeiro, supra; Latimer v. S/A Industrias Reundias F. Matarazzo, supra.* Cases dismissing actions on *forum non conveniens* grounds routinely involve plaintiffs who were citizens or residents of foreign countries, or sureties thereof, suing alien defendants in United States courts. *See, e. g., Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir. 1975); *United States Merchants' and Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line*, 65 F.2d 392 (2d Cir. 1933); *Domingo v. States Marine Lines*, 340 F.Supp. 811 (S.D.N.Y.1972); *Moutzouris v. National Shipping & Trading Co.*, 196 F.Supp. 482 (S.D.N.Y. 1961); *Heitner v. Zim Israel Nav. Co.*, 152 F.Supp. 3 (S.D.N.Y.1957); *De Sairigne v. Gould*, 83 F.Supp. 270 (S.D.N.Y.), *aff'd per curiam*, 177 F.2d 515 (2d Cir. 1949), *cert. denied*, 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338 (1950).

There has been no allegation that Top Form had chosen to bring suit in the Southern District of New York in order to vex, harass, or oppress the defendant, and this court finds that no such motive exists. As has been noted, "[w]e should respect plaintiff's choice of forum as long as no harassment is intended, especially when the alternative forum is a foreign one." *Thomson v. Palmieri, supra*, 355 F.2d at 66. It is thus evident that Avandero has not met its burden of showing "positive evidence of unusually extreme circumstances [such that] material injustice is manifest," *Leasco Data Processing Equipment Co. v. Maxwell, supra*, 468 F.2d at 1344, and its motion must be denied.

Accordingly, Societa's motion to dismiss for lack of personal jurisdiction is denied. Avandero's motions to dismiss for lack of personal jurisdiction, insufficiency of service of process, and on the ground of *forum non conveniens* are also denied.

So Ordered.